GREGORY S. SILVER (SBN 106309)
EVANS & SILVER
5826 EAST NAPLES PLAZA
LONG BEACH, CA 90803
TELEPHONE: (562) 439-9001
FACSIMILE: (562) 439-9002

ATTORNEYS FOR PLAINTIFF, DALE N. STRIETER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION

| | |
|---|---|
| DALE N. STRIETER<br><br>PLAINTIFF<br><br>vs.<br><br>PATRIOT ENVIRONMENTAL SERVICES, INC.; SUSAN SAN MARTIN, an individual and DOES 1 through 10, inclusive,<br><br>DEFENDANTS | Case No.: 8:21-cv-2111<br><br>Action Filed:<br><br>Trial Date:<br><br>1. COMPLAINT FOR CLAIM BENEFITS PURSUANT TO ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a) (1)(b); INTEREST AND ATTORNEY FEES<br><br>2. CLAIM FOR BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3); INTEREST AND ATTORNEY FEES<br><br>3. CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201<br><br>4. GENERAL NEGLIGENCE; INTEREST AND ATTORNEYS THEREON |

Plaintiff, Dale N. Strieter herein sets forth the allegations of his Complaint against Defendants, Patriot Environmental Services, Inc and Susan San Martin in their capacities as Administrator(s) of the involved ERISA PLAN.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 (the amount in controversy exceeds the sum of $75,000.00), and § 502(a)(1)(B) of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(e).

2. Venue lies in the Central District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was administered in part in this District, and the

1

COMPLAINT

breach took place in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because some of the events or omissions giving rise to the claim occurred within the District.

## THE PARTIES

3. Plaintiff Dale N. Strieter (hereinafter referred to as "Plaintiff" or "Mr. Strieter") is now, and at all times mentioned herein was, a resident of the State of California, County of Orange. Plaintiff is and at all times mentioned herein was a participant in the Patriot Environment Services, Inc. 401(k) and profit sharing plan and Roth 401(k) Plan (hereinafter referred collectively to as the "Plan") through his employment with Patriot Environmental Services, Inc.

4. Plaintiff is informed and believes that Defendant Patriot Environmental Services, Inc. adopted a 401(k) and profit sharing plan and was the Plan Administrator for the "Plan" in addition to being an authorized Corporation authorized to and is transacting business in the State of California.

5. Defendant Susan San Martin is an individual and was at all times relevant herein an employee of the Plan Administrator, Patriot Environmental Services, Inc. Defendant, Susan San Martin was the Human Resource Director for Patriot Environmental Services and at all times herein-mentioned held herself out as the person or contact who was responsible for administering the "Plan" for defendant, Patriot Environmental Services, Inc.

## FIRST CLAIM FOR RELIEF

[Claim Benefits Pursuant To ERISA § 502(a)(1)(b), 29 U.S.C. §1132 (a)(1)(b) Against All Defendants]

6. Plaintiff incorporates Paragraphs 1 through 5 as through fully set forth herein.

7. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to him under the plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan. Moreover, in LaRUE v. DEWOLFF, BOBERG & ASSOCIATES, 352 U.S. 248 (2008). The U.S. Supreme Court established a plan participant's right to sue a plan administrator for money damages incurred by the plaintiff, as a result of the breach of fiduciary duties by those implementing the "Plan".

8. Plaintiff was employed by Patriot Environmental Services, Inc. as a Technical Services Manager. Plaintiff Strieter terminated his employment with defendant Patriot in 2018 but kept his retirement benefits with the "Plan" until 2020.

9. In January of 2020, the plaintiff indicated to the defendant, San Martin that he wished to terminate his interest in the "Plan" and that he wanted to self-direct all of his retirement assets into a personal IRA, at Schwab. On January 23, the plaintiff was told by the defendant, Susan San Martin that she would take care of the transfer and that plaintiff was further advised by Ms. San Martin that a "Termination Form" was required. Ms. San Martin further advised Plaintiff, that she would take care of the requested transfer and that Plaintiff needed to get the "Termination Form" to her to process. Defendant, San Martin on the same day emailed the required "Termination Form" to the plaintiff. Plaintiff immediately filled out the form and mailed it to the defendant, Patriot Environmental Services Inc. at its physical office located 508 East "E" Street, Unit A, Wilmington, CA 90744. (See Exhibit "A" attached hereto).

10. The "Termination Form" which states at **"STEP 6 RETURN FORM TO YOUR EMPLOYER OR THIS FORM WILL NOT BE PROCESSED"** was mailed back to the HR director, Susan San Martin immediately upon receipt of said form from Ms. San Martin.

11. Plaintiff then initiated the following emails to Ms. San Martin with the as noted lack of responses from Ms. San Martin.

From: Dale Strieter <dales1952@outlook.com>
Sent: Thursday, January 23, 2020 1:23 PM
To: Susan San Martin <ssanmartin@patriotenvironmental.com>
Subject: RE: 401K Information

Hello Susan,

Thank you for your prompt reply.

Can the form be scanned and emailed to you?
If not, what mailing address for Patriot would you like me to send it to?

Thanks again for your help.

Dale Strieter

3

COMPLAINT

(562) 243-4344

**From:** Dale Strieter <dales1952@outlook.com>
**Sent:** Monday, February 3, 2020 4:28 PM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** FW: 401K Information

Hello Susan,

I wanted to verify that you received my 401K Termination Form and if you had any questions regarding the request?

Thank you,

Dale Strieter

**From:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Sent:** Wednesday, February 5, 2020 10:59 AM
**To:** Dale Strieter <dales1952@outlook.com>
**Subject:** RE: 401K Information

Hi Dale:

I haven't received an email. Did you mail it in? I'm out of the office today at a Senior Management meeting so if it was mailed, it should be in the office.

Thanks,

Susan

**From:** Dale Strieter <dales1952@outlook.com>
**Sent:** Wednesday, February 5, 2020 11:22 AM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** RE: 401K Information

I did mail it to the E Street address. If it is not there when you return, can I send a scanned copy by email to you?

Thanks,

Dale Strieter

**From:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Sent:** Wednesday, February 5, 2020 11:23 AM
**To:** Dale Strieter <dales1952@outlook.com>
**Subject:** RE: 401K Information

COMPLAINT

Yes but I'm sure I received it. I'll let you know tomorrow. Thanks,

Susan

**Susan San Martin, SPHR**
**From:** Dale Strieter <IMCEAEX- **Sent:** Saturday, February 8, 2020 6:14 PM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** RE: 401K Information

Did you receive it?

Thanks,

Dale Strieter

**From:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Sent:** Sunday, February 9, 2020 9:04 AM
**To:** Dale Strieter <dales1952@outlook.com>
**Subject:** Re: 401K Information

Good morning.

Yes I did; I apologize for not letting you know. Work was a bit crazy at the end of the week.

Have a great Sunday!!

Susan

Sent from my iPhone


**From:** Dale Strieter
**Sent:** Wednesday, February 19, 2020 3:59 PM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** RE: 401K Information

Hello Susan,

Has the request been submitted to ADP for processing?

Thanks,

Dale Strieter
5

COMPLAINT

**From:** Dale Strieter
**Sent:** Friday, March 6, 2020 8:23 AM
**To:** 'Susan San Martin' <ssanmartin@patriotenvironmental.com>
**Subject:** 401K

Susan –

I have sent emails now on 2/19, 2/25, 3/3 and now 3/6.
Is there some reason your are not responding to my request?

Dale Strieter

**From:** Dale Strieter <dales1952@outlook.com>
**Sent:** Tuesday, March 10, 2020 11:16 AM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** FW: 401K

Please contact me regarding my 401K Plan transfer.

Dale Strieter

On Mar 10, 2020, at 11:16 AM, Susan San Martin <ssanmartin@patriotenvironmental.com> wrote:

Hi Dale:

I have been out of the office and will call you later today. I apologize for the delay in responding.

Susan

**From:** Dale Strieter <dales1952@outlook.com>

**Sent:** Thursday, March 12, 2020 8:27 PM

**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>

**Subject:** Re: 401K


Still waiting to hear from you

Regards... Dale
(562) 243-4344

**From:** Dale Strieter <IMCEAEX-
**Sent:** Friday, March 20, 2020 2:31 PM
**To:** Susan San Martin <ssanmartin@patriotenvironmental.com>
**Subject:** 401K

6

COMPLAINT

> Susan,
>
> You have left me no other choice than to make a complaint to the Department of Labor and am consulting with legal counsel to determine if negligence or other misconduct is present in your (and therefore Patriot's) processing of my Termination Form and if recovery of losses is possible. It was your corporate position responsibility and fiduciary duty for the timely processing of my Termination Form. Your lack of performing the simple task of a signature and fax submittal of the Termination Form to ADP subsequently lead to multi-week delays in the distribution of my 401K and Roth 401K holdings. I started contacting you regarding progress in processing of my Termination Form on 2/9/2020. Numerous emails and phone calls went unanswered. I ultimately contacted ADP on 3/16/2020 and they informed me that ADP had <u>still not received</u> the signed Termination Form from Patriot. I informed them of the issue I was having with you and asked if there was any other way to request distribution of my 401K funds. A representative from ADP walked me through the process of ADP's on-line request procedure and it was completed in less than 5 minutes. Your lack of timely (or ANY) form submittal and lack of informing me of the ADP on-line procedure resulted in an approximate $100,000 reduction in value of my account from when I first requested you to process the Termination Form to when I was able to actually request the distribution myself.
>
> Dale Strieter

12. At no time during the period of January 23, 2020, and through March 20, 2020, did defendant, Susan San Martin advise plaintiff, Mr. Strieter, that she was not a fiduciary for the "Plan". The clear inference to be gleaned from her email responses above is that she is in fact the acting "fiduciary" and that the plan termination or the rollover to a personally directed plan must be completed through her. Simply put, Ms. San Martin held herself out as the "fiduciary" and if she was not the fiduciary, reason dictates that she would have so advised the plan participant, Dale N. Strieter that she is not the fiduciary.

13. As a direct and proximate result of Patriot and its agent, Susan San Martin's complete failure to act, plaintiff incurred a loss of $123,421.42 in the cash value of his retirement assets.

14. Plaintiff contends a reasonable time to perform the task of terminating and rolling over his retirement assets would be within one week of the request on January 23, 2020.

15. On October 14, 2020, Mr. Strieter through counsel provided the "Plan" and Ms. San Martin with notice of his claim for damages resulting from the breach of fiduciary duty by the "Plan".

16. On December 24, 2020, the Plan Administrator through counsel advised the plaintiff that his claims were denied.

17. On or about February 22, 2021, plaintiff appealed the denial of the claim.

18. In a letter dated July 9, 2021, counsel for the plan administrator again denied the plaintiff's claim and advised the plaintiff that suit must be filed on or before January 6, 2022.

19. Plaintiff herein had completed all steps required prior to the filing of this complaint under the plan and ERISA, including the above-mentioned internal appeal of the denial of benefit per 29 U.S.C. § 1133.

20. The defendant's decision denying benefits to Mr. Strieter is erroneous, arbitrary, capricious and an abuse of discretion. In wrongfully denying the plaintiff's return of his lost benefit(s), defendants and each of them have violated and continue to violate ERISA 29 U.S.C. § 1132(a)(a)(b), the terms of the plan and strong public policy.

21. As a direct and proximate result of the failure to act as described above, Mr. Strieter has been deprived of retirement funds equal to $123,421.42 and as determined at trial herein.

22. As a further direct and proximate result of the wrongful failure to act Mr. Strieter has been required to incur attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

## SECOND CLAIM FOR RELIEF

**[Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) Against Both Defendants]**

23. Plaintiff incorporates Paragraphs 1 through 22 as though fully set forth herein.

24. ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a plan participant to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief to redress such violations, including the fiduciary duty provisions."

25. ERISA § 404(a), 29 U.S.C. § 1004(a) requires that defendants, as fiduciaries must, discharge its duties with respect to a plan solely in the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable

expenses of administering the plan, and with care, skill, prudence and diligence under the circumstances then prevailing to a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

26. By engaging in the acts and omissions described above, including but not limited to complete failure to timely act or respond in any appropriate manner consistent with applicable federal law, defendants breached their fiduciary duty to Mr. Strieter and have violated Title I of ERISA.

27. Defendants have breached their fiduciary duties to Mr. Strieter as established by ERISA by the failure to timely terminate his plan interest, as in doing so they acted without the required care, prudence and diligence, did not devote utmost loyalty to the interests of Mr. Strieter, did not make a decision regarding the Plan solely in the interests of Mr. Strieter.

28. As a direct and proximate result of the defendants' breaches of their fiduciary duties and violations of Title I of ERISA, Mr. Strieter has been harmed as deprived on his retirement of $123,421.42, both accrued and future benefits, and entitled to injunctive and other appropriate equitable relief to remedy the breaches, pursuant to ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited hereto, the injunction against the defendants improper refusal to pay his losses.

29. As a further direct and proximate result of the breach by defendants of their fiduciary duties, Mr. Strieter has been required to incur attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

### THIRD CLAIM FOR RELIEF

**[Claim for Declaratory Relief Pursuant to 28 U.S.C. § 2201 Against Both Defendants]**

30. Plaintiff incorporates Paragraphs 1 through 29 as though fully set forth herein.

31. The Declaratory Judgment Act, 28 U.S.C. § 2201 permits a federal court, in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of any interested party seeking such declaration.

32. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), a participant in the plan is entitled to declaratory judgment on entitlement to the accrued benefits and request to clarify his rights to future benefits under the terms of the plan.

9

COMPLAINT

33. A controversy now exists between the parties as to whether Mr. Strieter is entitled to the money damages under the Plan, both the accrued and future benefits. Mr. Strieter seeks the declaration of this Court that he is entitled to being repaid his retirement assets.

34. Plaintiff desires a judicial determination that he is entitled said money.

35. Such a declaration is necessary and appropriate at this time in order the parties may ascertain their rights and duties with respect to the terms of the plan. Furthermore, a determination of the respective rights and liabilities of the parties is necessary and appropriate in order to avoid a circumvention of laws and the circuitry and multiplicity of actions concerning the subject instruments and acts.

## FOURTH CLAIM FOR RELIEF

### [Claim for General Negligence Against Both Defendants]

36. Plaintiff incorporates paragraphs 1-35 as though fully set fourth herein.

37. Plaintiff, Dale N. Strieter alleges that defendants Patriot Environmental Services Inc. and Susan San Martin were the legal and proximate cause of damages to plaintiff to wit loss of $123,421.42 from his retirement assets by the following acts or omissions by defendants and each of them and that defendant's negligence caused the above losses and damages to plaintiff.

38. On January 23, 2020, plaintiff advised the HR director of defendant, Partiot Environmental Services Inc. of his election to "cash out" or rollover his retirement assets through the "Plan" by filling out the employer's Plan Administration "Termination Form #206". Plaintiff wanted to self administer the plan benefits and move to a "cash account" at Schwab. Defendant, Susan San Martin never indicated to plaintiff that she was not responsible to effectuate the transfer of plaintiff's account to his IRA. Defendant, Susan San Martin knew or should have known that plaintiff's request to transfer of his account would not be processed unless she approved the transfer.

39. In spite of this immediate return of this Termination Form #206 to Susan San Martin, the acting fiduciary for the plan, neither the employer, plan administrator nor the ostensible fiduciary, Susan San Martin did anything to effectuate this reasonable request to cash out or terminate his retirement assets. It is further alleged on information and belief that Susan San Martin either knew or should have

known that the stock market was very volatile at the time Plaintiff requested his termination of the Plan. Moreover, Ms. San Martin knew that her failure(s) to act would negatively impact Plaintiff's retirement assets.

40. As a proximate result of the plan administrator and the ostensible fiduciary, Susan San Martin's failure to act responsibly, plaintiff lost $123,421.42 from his established retirement assets. If Susan San Martin had acted in a reasonable fashion, the above-referenced sums or money would not have been lost all to his detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

### As to the First Claim for Relief:

A. Declare that Defendants have violated the terms of the Plan.

B. Declare that Plaintiff has monetary losses of $123,421.42.

C. Order Defendants to pay the $123,421.42 together with interest at an appropriate rate.

D. Award Plaintiff reasonable attorney's fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

### As to the Second Claim for Relief:

A. Declare that Defendants breached their fiduciary duty to Plaintiff.

B. Declare that by refusing to terminate Plaintiff from the Plan, defendants and each of them have violated ERISA and said violation damaged in the sum of $123,421.42.

C. Order that Defendants provide other appropriate editable relief, including but not limited to surcharge, restitution, prejudgment interest, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants.

D. Award Plaintiff reasonable attorney's fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

### As to the Third Claim for Relief:

A. Declare that Defendants erred in failing to timely act therefore improperly refused to pay Plaintiff his proper retirement benefits in the amount of $123,421.42.

*As to the Fourth Claim for Relief:*

A. Damages in the amount of $123,421.42.

*As to All Claims for Relief*

A. For costs of suit incurred herein.

B. For such other and further relief as the Court deems Just and proper.

**DEMAND JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: December 20, 2021

EVANS & SILVER

By_____
Gregory S. Silver
Attorneys for Dale N. Strieter

EXHIBIT "A"



# TERMINATION FORM

Participant must be provided with the Special Tax Notice Regarding Plan Payments.

## INSTRUCTIONS

The Termination Form is used to process Plan distributions due to a participant's termination of employment (due to retirement, disability, and in the event of Plan termination). All sections must be completed in full for your request to be processed.

### STEP 1 Participant Information
Please print and complete this section in full.

### STEP 2 Reason for Distribution
Check one box as the reason for distribution and enter the termination date (this will be the date that your employment with your employer terminated or the date your employer terminated the Plan. Check with your Plan Administrator if you do not know this date). If you checked Disability as a Reason for Distribution, see your Summary Plan Description to determine if you meet the Plan's definition of disability; and, if you have Roth 401(k) money in the Plan, also see Note on "Roth Disability" in Step 3.

### STEP 3 Funds Disbursement Election
Check one box (A, B, or C) to identify how you want to be paid and make the applicable elections within each section.
- If you request a 100% cash distribution, you will receive one check payable to you.
- If you request a 100% Rollover, you will receive one check payable to the Institution or Trustee that you indicate on this Form in Step 4.
- If you request a portion of the distribution to be rolled over and a portion to be paid to you in cash, you will receive 2 checks: one payable to the Rollover Institution/Trustee and one payable to yourself.
- If you elect to Rollover your taxable amounts and receive a cash distribution of the remaining non-taxable amounts, but your Roth distribution doesn't qualify as a qualified Roth distribution (see below), you will receive 3 checks: one check consisting of your pre-tax amounts for you to rollover to a pre-tax account, one consisting of your Roth earnings for you to rollover to a Roth account and a third separate check to you in cash for your Roth (and after-tax, if any) contributions.

Note: The "Partial Distribution" and "Installments" options are not available if the reason for your distribution is the termination of the Plan or your account balance (excluding any rollover account under the Plan) is $5,000 or less. Any outstanding loan balance will become taxable upon a full or partial distribution.

**Please read the Special Tax Notice for information about rollovers, tax withholding, the early distribution penalty, qualified Roth distributions and other important matters that may affect your distribution. ADP cannot provide legal or tax advice and nothing on the Form or Instructions should be construed as tax or legal advice.**

Part or all of your distribution will be taxable unless your distribution qualifies as a Qualified Roth Distribution. You may elect to rollover just your pre-tax amount and receive any after-tax, if any, as a cash distribution.

**Note on Qualified Roth Distributions** - Whether your withdrawal from a Roth account is entirely tax-free or whether the earnings are taxable depends on whether the distribution meets the requirements under the Internal Revenue Code for a qualified Roth distribution. A qualified Roth distribution is a payment made after you are age 59½ (or your death or disability) and after you have had a Roth account in the Plan for at least 5 years. In applying the 5-year rule, count from January 1 of the year your first contribution or rollover was made to the Roth accounts under the Plan or if you had a prior direct rollover of a Roth account from another employer plan, count from January 1 of the year of your first Roth contribution or Roth rollover to this prior employer plan.

**Plan Records Must Show 5 Year Rule Satisfied** - If the Plan's records, as recorded at ADP, do not indicate your Roth distribution is a qualified Roth distribution (i.e., reflect that you have 5 years of Roth 401(k) participation and/or your distribution is not on account of death, disability, or attainment of age 59½), earnings on your distribution from the Roth 401(k) account under the Plan will be taxable and subject to the mandatory 20% federal income tax withholding to the extent the distribution is paid to you and is not directly rolled over.

**Note on Roth Disability** – If you checked disability as your Reason for Distribution in Step 2, you must meet the definition of Roth Permanent Disability in Step 4B of the Termination Form, in addition to the other qualified Roth distribution requirements, in order for your distribution to be a qualified Roth distribution. Note: The Roth disability definition may be different than the Plan's definition of disability.

### STEP 4 Rollover Information
If you requested a Rollover in Step 3, complete section A and/or B in Step 4. Select the type of account to which the Rollover will be made and complete the Name of the Rollover Institution/Trustee to which the check should be made payable. Note: If you are rolling over a distribution to another employer plan, please check with the plan administrator of such plan on specific requirements needed to make the rollover and the specific types of money that the employer plan will accept.

**Note on Direct Rollovers of Pre-tax Amounts to a Roth IRA:** Direct rollovers are not subject to mandatory federal tax withholding. Therefore, ADP will not withhold any federal tax amount on any direct rollovers, including direct rollovers of pre-tax amounts to a Roth IRA which must be included in your taxable income. **Therefore, you should make sure you are able to pay all required income taxes in connection with such a rollover. You are strongly encouraged to consult with your tax advisor before making your election.**

### STEP 5 Participant Acknowledgement and Signature
Read the acknowledgment then sign and date the form.

### STEP 6 Return to Your Former Employer or This Form WILL NOT BE PROCESSED.
The Plan Administrator Approval Signature, date and Recordkeeping Plan # are required.

Roth (0315)
99-0287(CWPD)

99-3687

(form continues on back →)
Page 1 of 3

# TERMINATION FORM

**ADP**

## STEP 1 Participant Information (Please Print and Complete This Section in Full)

Phone # 562-243-4344

Social Security # 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

Employee Name (Last) STRIETER   (First) DALE   (Middle Initial) M

Address (Street) 3261 COPA DE ORO DR.   (Apt. # / PO Box#) ___

(City) LOS ALAMITOS   (State) CA   (Zip Code) 90720

Participant must be provided with the Special Tax Notice Regarding Plan Payments.

## STEP 2 Reason for Distribution (Please check one box only and enter date.)

☐ Employment Termination or Resignation
☒ Retirement
☐ Disability (see Roth Disability in Step 4 below if you have a Roth account under the Plan)
☐ Plan Termination by Employer

Termination Date: 08/03/2018
MM/DD/YYYY

## STEP 3 Funds Disbursement Election (Select A, B or C; if a Rollover is selected, also complete Step 4)

A. ☐ Total Distribution (select one of the following)

   ☐ Pay me 100% of my account balance in a cash distribution
   ☒ Rollover 100% of my account balance (Complete Step 4)
   ☐ Rollover $_____ (and check one)
   from my non-Roth source(s) ___ from Roth source(s) ___ and pay the remainder to me in a cash distribution (Complete Step 4) (taxable amounts will be rolled over before any non-taxable amounts)
   ☐ Rollover all of my pre-tax amounts (Roth and non-Roth) pay me any nontaxable amounts in a cash distribution (Complete Step 4)

OR

B. ☐ Partial Distribution Distribute a portion of my vested account balance and leave the remaining balance in the Plan.
(A Partial Distribution is not available if the Plan Sponsor is terminating the Plan.) Specify the dollar amount to be distributed which is less than 100% of your account balance in the Plan, a payment option, and select a money type/source (if desired):

Partial Distribution Amount: $_____

Payment Option: (select one)
   ☐ Pay me 100% of the Partial Distribution Amount in a cash distribution (select money type below if desired)
   ☐ Rollover 100% of the Partial Distribution Amount (Complete Step 4) (select money type below if desired)
   ☐ Rollover $_____ (and check one)
   from my non-Roth source(s) ___ from Roth source(s) ___ and pay the remainder to me in a cash distribution, up to the Partial Distribution Amount (Complete Step 4) (taxable amounts will be rolled over before any non-taxable amounts) (do not select money type below)

Money Type Election: Your Partial Distribution (both Rollover and cash) will be withdrawn proportionally from all of your money types unless you limit the Partial Distribution to the following money type(s) by checking one or more boxes below:
   ☐ Roth 401(k) (Roth elective deferrals and earnings)
   ☐ Roth Rollover (Roth Rollover including earnings and In-Plan Roth Rollovers including earnings)
   ☐ Pre-tax Rollover (Pre-tax Rollover money and earnings)
   ☐ After-tax (non-Roth after-tax money and earnings)

Note: If the type of money selected is not sufficient to cover the distribution amount, then the amount processed will be reduced to the maximum amount available for that money type(s).

OR

Roth (0315)
99-0267(CWPD)

99-3687

Page 2 of 3

# TERMINATION FORM - 206

C. ☐ **Installments** Distribute my vested account balance to me in the form of periodic payments. Only available if your vested account balance excluding any rollover account exceeds $5,000. Not available if the Plan Sponsor is terminating the Plan. Please contact your Plan Administrator if you would like your installments direct deposited. The number of payments may not exceed your life expectancy, or the joint life expectancy of you and your beneficiary. Fill in your elections below:

Installment Payment Start Date (MM/DD/YYYY): _____

Number of payments: _____  OR Payment Amount _____

Frequency of Payments (Select One): ☐ Monthly ☐ Quarterly ☐ Semi-annually ☐ Annually

I understand that mandatory 20% Federal Income Withholding tax will apply (and any mandatory state tax withholding may apply) to the taxable portion of my distribution, including any installments payable for a period of less than 10 years. If I elect installment payments for 10 or more years, federal withholding may apply, unless I elect to have no withholding apply.

Note: Regardless of your election, you will remain liable for any federal income tax on the distribution amount. You may also be subject to penalties under the federal estimated tax payment rules if your tax payments and withholding amounts are not sufficient.

☐ Check here if installment payments will be made for 10 years or more and you elect no withholding

## STEP 4 Rollover Information (Select destination for your Direct Rollover)

Complete Section A for a Direct Rollover of your Non-Roth 401(k) amounts.
Complete Section B for a Direct Rollover of your Roth 401(k) accounts if applicable.

A. **Non-Roth 401(k) amounts:** Select the type of account and fill in the name of the institution/trustee to which your Direct Rollover of non-Roth amounts will be made:

☒ Traditional IRA
☐ Roth IRA (Pre-tax amounts will be included in your taxable income; see Instructions)
☐ Employer Plan (Qualified Plan, 403(a) Qualified Annuity, 457 Plan, or 403(b) Tax-Sheltered Annuity)

Make Check Payable to (Fill in Name of Institution/Trustee): CHARLES SCHWAB FBO DALE STRIETER, PO BOX 982600, EL PASO, TX 79998-9941   ACCOUNT # 8571-3049

NOTE: Pre-tax amounts in your account balance are included in your Direct Rollover before any after-tax amounts. "After-tax" means only the amount in your account which was taxed before it was contributed but does not include Roth amounts.

B. **Roth 401(k) accounts:** Select the type of account and fill in the name of the institution/trustee to which your Direct Rollover of Roth amounts will be made:

☒ Roth IRA
☐ Employer Plan (Qualified Plan, 403(a) Qualified Annuity, 457 Plan, or 403(b) Tax-Sheltered Annuity)

Make Check Payable to (Fill in Name of Institution/Trustee): CHARLES SCHWAB FBO DALE STRIETER, PO BOX 982600, EL PASO, TX 79998-9941   ACCOUNT # 1260-9868

☐ **Roth Disability:** Check here if (i) you checked Disability as the Reason for Distribution in Step 2 and (ii) you meet the following requirements of a Roth Permanent Disability – you are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in your death or to be of long-continued and indefinite duration.

## STEP 5 Participant Acknowledgement and Signature

I hereby authorize the distribution of funds from my account according to the directions identified above. I understand that there may be certain penalties, transaction fees and/or taxes due. By signing this form, I certify that within the last 180 days I have received a notice describing the tax consequences of my distribution options and the material features of the optional forms of payment available under the Plan. I am aware that I may have the right under the Plan to defer distribution if my account balance exceeds the Plan's cashout limit. I am aware that the Internal Revenue Service recommends that I take 30 days to consider my distribution options; however, by returning this signed form prior to the expiration of the 30-day period, I hereby waive the 30-day waiting period. Further, I certify that no portion of the benefits to which I am entitled from the Plan is subject to a qualified domestic relations order which would affect the payment of any benefits from the Plan. I understand that there may be penalties and/or taxes due depending upon my particular circumstances.

Signature of Employee/Participant: *Dale Strieter*   Date: 01/23/2020

## STEP 6 Return Form to Your Employer or This Form WILL NOT BE PROCESSED

Plan Administrator Approval/Signature: _____
Recordkeeping Plan #: _____   Date: _____

Plan Administrator should fax completed and approved form to: 1-973-712-7489

Roth (0315)
99-0287(CWPD)

99-3687

Page 3 of 3